UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP T. SMITH,

    Plaintiff,

v.

No. 12-cv-10649
Honorable Victoria A. Roberts

RAYMOND L. LAHOOD, Secretary
Department of Transportation and
JOHN WHITEHURST,

    Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Phillip T. Smith ("Smith") filed this action against Raymond Lahood and John Whitehurst alleging he was not selected for an air traffic controller position because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. Smith says that the evidence establishes direct and indirect discrimination.

By stipulation, Whitehurst was dismissed. LaHood filed this motion for summary judgment saying that Smith was not hired because he received a bad reference.

LaHood's motion is **GRANTED**. This Complaint is **DISMISSED**. There was no age discrimination. Age could not be ascertained from the applications; thus, there could be no direct discrimination. LaHood establishes a legitimate nondiscriminatory reason for not hiring Smith; and, Smith fails to demonstrate pretext. This defeats Smith's claim of indirect discrimination.

**II. BACKGROUND**

Smith is an air traffic controller specialist at the Flint Bishop Airport ("FNT"); he is certified at FNT. Smith -- and forty-eight others-- applied for one of the seven open air traffic control specialist positions at Detroit Metropolitan Airport ("DTW"). At the time of applying, Smith had more than twenty-two years of experience and forty-two awards. He was also over forty.

Human resources for the Federal Aviation Administration ("FAA") screened the applications, and found thirty-nine qualified. Their applications were sent to DTW air traffic manager, Gary Ancinec; he delegated the evaluation and recommendation of candidates to operations manager Whitehurst. Whitehurst was to make recommendations for Ancinec's final approval.

Ancinec told Whitehurst to pick applicants who: (1) could be trained and certified as controllers at DTW; (2) came highly recommended by current and former supervisors; and (3) would bring a positive attitude to the DTW facility.

Whitehurst had a specific list of questions to ask each applicant's manager:

[1] Can you tell me some information about the candidates' [sic] abilities?
[2] Is the employee a team player and do they [sic] work well with others?
[3] Are they [sic] able to handle difficult situations well?
[4] What are the strengths of this employee?
[5] What are the weaknesses of this employee?
[6] Please tell me about the attitude of the employee?
[7] What positive contributions has this employee brought to the work environment?
[8] Do they [sic] take that extra effort/step to help of their [sic] co-workers or provide quality service?
[9] Is the employee reliable?
[10] Are there any issues with this employee?
[11] Based on your knowledge of the employees' [sic] performance, do [sic] believe they [sic] possess [sic] the abilities to learn to effectively control the increased traffic volume at DTW?

>   [12] If they [sic] were [sic] selected, when would you be able to release this employee?
>   [13] Do you have anything further you would like to add?

Whitehurst contacted James Schneider, Smith's manager. While Schneider said Smith was the "strongest of all candidates from FNT," he declined to comment on Smith's interpersonal skills. Specifically, Whitehurst asked Schneider whether Smith was "a team player." Schneider evaded the question telling him that Smith had "somewhat of a Flint attitude." Schneider does not deny this testimony.

Schneider testified that as Whitehurst probed further into Smith's interpersonal skills, Schneider discussed that Smith could be adversarial. Schneider and Whitehurst agree that no comment was made about Smith's ability to work with others.

Whitehurst selected his top candidates; he included Smith, but ranked him lowest because his reference check was questionable.

Whitehurst met with Ancinec to discuss his recommendations. Whitehurst informed Ancinec of his concern with Smith's reference. Ancinec then called Christina Hartges, who he believed was Smith's former Flint supervisor and who Ancinec had a prior working relationship with, to gather information about Smith's personality.

Hartges did not give Smith a positive recommendation, describing Smith as a "trouble maker." Ancinec then removed Smith's name from the list of recommended candidates.

Smith says that this call to Hartges was not mentioned in the EEOC investigation. Further, Smith says Hartges was not qualified to provide a reference for him because she was: (1) not his supervisor and (2) only knew him for eight months. He also says that Ancinec did not conduct two reference checks for other candidates.

The seven selected air traffic controller specialists were all under forty; the oldest was thirty-five. All but one had under three years experience; the thirty-five year old applicant had fifteen and twelve awards. And, all seven received strong, positive recommendations. LaHood says the candidates were primarily selected based on these positive recommendations.

Smith alleges that the seven were hired because they were young. He alleges that before the selections were announced, Justin Dolfus, a young trainee controller who was not yet certified, told him that he spoke with Whitehurst. During their conversation, Whitehurst said he was "not going to select anyone trying to get their high-three." Dolfus testified that Whitehurst did not make the statement and Dolfus did not tell Smith anything.

Smith argues that this comment shows direct evidence of discrimination. In the alternative, he says that there is circumstantial evidence of discrimination which warrants jury review.

## III.    STANDARD OF REVIEW

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Id.* at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and...designate specific facts

showing that there is a genuine issue for trial." *Id.* at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F. 3d 870, 873 (6th Cir. 2003). "The mere existence of a *scintilla* of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**III.    ANALYSIS**

Age discrimination can be proven by either direct or indirect, i.e., circumstantial evidence. *Blizzard v. Marion Technical Coll.,* 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Geiger v. Tower Auto.,* 579 F.3d 614, 620 (6th Cir. 2009)); *Manzer v. Diamond Shamrock Chemicals,* 29 F.3d 1078 (6th Cir. 1994). If an employee establishes direct evidence, he must also show that the discrimination was the "but for" cause of the discriminatory treatment.

When there is no direct evidence of age discrimination, the claim is analyzed using the burden-shifting framework of *McDonnell Douglas, Corp. v. Green*, 411 U.S. 792 (1973).

*Blizzard,* 698 at 283.

**A.     Direct Evidence**

Smith says that Whitehurst's alleged comment to Dolfus that he was "not going to select anyone trying to get their high-three," is direct evidence of discrimination.

Lahood says that the statement is hearsay within hearsay and cannot create a genuine fact dispute.  Alternatively, Lahood argues that there is no direct discrimination because the term high three relates to pensions, not age.

The Court need not determine whether this statement is admissible because a straight forward interpretation of Whitehurst's alleged statement does not implicate age discrimination. "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger v. Tower Auto.,* 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003)).

Allegedly saying one will "[n]ot select anyone trying to get their high-three[,]" does not mean one will not hire someone who is old.  High three refers to the highest salary obtained by averaging salaries over a three-year time period and is relevant to calculating pensions.  It is a term of art in the FAA.  The high-three can be earned anytime during one's career. Interpretation of the statement means that Whitehurst would not hire a person who was seeking higher pay than s/he received throughout his/her career.  While all controllers must retire at age fifty-six, there is no age correlation.

And, Smith fails to show how the statement could relate to age.  Nothing in the record shows that the older a controller is, the higher the pay.  Nor does the evidence show that the

length of employment impacts pay.

Importantly, an applicant's age could not be determined from the application. Undisputedly, no applicant disclosed age. The only experience listed on the application was military and controller. None of the applicants was contacted or had a face-to-face interview. There were no telephone interviews. Each packet was analyzed based on telephone interviews with supervisors only.

Even if this evidence did show evidence of direct discrimination, Smith's claim would fail because he cannot show that age was the "but-for" cause. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177 (2009) (employee has the burden of proof to establish that "age was the 'but-for' cause of adverse action."). "But-for" means that if the discriminatory action was removed, Smith would have received the job. *Geiger,* 579 F.3d at 621.

Smith's reference from Schneider alone defeats his claim. Schneider is a manager who insinuated that Smith was a "trouble" employee. As Whitehurst probed, Schneider admittedly evaded his questions. Concerned with this reference, Ancinec contacted someone whom he trusted in Flint to provide a frank opinion; he discovered that Smith was perceived as having a bad attitude. Smith's failure to receive an offer was not related to his age; it was based on his reference.

There is no direct evidence of age discrimination.

### B.     Indirect Evidence

Alternatively, Smith argues that even if his statement is inadmissible, he can prevail under the *McDonnell Douglas* framework. He is wrong.

To establish a *prima facie* case of age discrimination, Smith must show that: "(1) he was

at least 40 years old at the time of the alleged discrimination, (2) he was subjected to an adverse employment action, (3) he was otherwise qualified for the position, and (4) he was rejected and someone outside the protected class was selected." *Harris v. Metro Gov't of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010). To overcome a *prima facie* case of discrimination, an employer must "articulate a legitimate nondiscriminatory reason" for its action. *See Barnes v. GenCorp Inc.,* 896 F.3d 1457, 1465 (6th Cir. 1990) (citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981)). Afterwards, the burden shifts to Smith to prove by a preponderance of the evidence that LaHood's asserted reasons "were not its true reasons, but were a pretext for discrimination." *Id.* at 1464.

Assuming *arguendo* that Smith can establish a *prima facie* case, his claim fails because Ancinec had a legitimate non-discriminatory reason for deciding not to hire Smith. And, Smith shows no pretext.

To establish pretext, Smith must show that the proffered reason:

(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. Wexler v. White's Furniture, Inc., 317 F.3d 564, 576 (6th Cir. 2003) (citing Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000).

*Id.*

"The three-part test need not be applied rigidly. *Blizzard,* 698 at 285. "Pretext is a commonsense inquiry: did the employer [not hire Smith] for the stated reason or not?" *Chen,* 580 F.3d at 400 n.4.

Neither Smith's current nor former manager gave Smith a positive recommendation on attitude, reliability, or positive contributions to the Flint facility. Schneider said Smith could be adversarial; Hartges described him as a trouble maker.

8

All seven of the selected employees received glowing recommendations which included comments like "good team player," "very good attitude" and "personable, easy going."

LaHood says Smith's bad references prevented him from getting the job; and, Smith presents no evidence from which a jury could reasonably reject LaHood's explanation for declining to hire him. Whitehurst and Ancinec placed heavy emphasis on employee morale and were free to do so. Indeed, while a thirty-five year old controller was hired, that applicant came highly recommended.

Smith's attempt to establish pretext by arguing that no applicant over forty was hired is unavailing. To establish pretext, Smith must show that he was more qualified than the applicants hired, i.e., that he had better recommendations and more experience. *See Bender v. Hecht's Dep't Stores*, 455 F.3d 612 (6th Cir. Tenn. 2006).

While Smith was more experienced, his recommendations did not check out; he was not more qualified. No one who received a poor recommendation was hired, regardless of age. Smith's experience evidence is not enough for his claim to survive summary judgment.

Additionally, the Court cannot infer discrimination based on a statistical analysis because Smith does not provide all applicants' data.

There is no pretext; Ancinec and Whitehurst decided not to hire Smith because he received a bad recommendation.

## V. CONCLUSION

LaHood's motion for summary judgment is **GRANTED.** This Complaint is **DISMISSED.** There was no age discrimination. Age could not be ascertained from the applications; thus, there could be no direct discrimination. LaHood establishes a legitimate

nondiscriminatory reason for not hiring Smith; and, Smith fails to demonstrate pretext. This defeats Smith's indirect claim of discrimination.

    **IT IS ORDERED.**

                                                                           s/Victoria A. Roberts
                                                                           Victoria A. Roberts
                                                                           United States District Judge

Dated: October 18, 2013

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 18, 2013.
>
> s/Linda Vertriest
> Deputy Clerk